**Cecil PETERSON, Plaintiff,**

v.

**Ralph E. CHRISTENSEN, Defendant.**

**No. 76–C–75 W.D.**

United States District Court, E. D. Wisconsin.

Aug. 16, 1978.

---

**16.** Doc. 16, at 5.

**17.** Doc. 17, at 52.

**18.** *Id.*

**19.** *Id.*

**20.** Doc. 17, at 9.

**21.** *Id.* 41. California refiners processing the low grade oil profited from the lower price of entitlements for the old oil.

John M. Wiley, Wausau, Wis., for plaintiff.

Bronson C. LaFollette, Wis. Atty. Gen., by Mary V. Bowman, Madison, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The parties have filed cross-motions for partial summary judgment. In addition, the defendant has filed a motion in limine and has moved that the court take judicial notice of certain matters he deems relevant to the summary judgment motions and the issue for trial.

Pursuant to a stipulation of facts agreed to by the parties, the following facts are undisputed. The plaintiff is an enrolled member of the Red Cliff Band of Lake Superior Chippewa Indians. He operates a commercial fishing business and employs three fishermen on a full time basis to assist him in his operations in Bayfield, Wisconsin. At all pertinent times, the plaintiff conducted his fishing operation without a commercial fishing license from the Wisconsin department of natural resources (DNR).

The defendant is a conservation warden supervisor employed by the DNR.

On September 2, 1975, the defendant was patrolling an area of Lake Superior known as the Gull Island Shoals. A DNR regulation, NR 26.23, Wis.Admin.Code 1975, purported to close the Gull Island Shoals to all fishing from September 1 to November 30 annually. The defendant observed a set of the plaintiff's gill fishing nets in the closed area and lifted the nets and the fish caught in them under authority of NR 26.23.

The plaintiff filed this action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 finding that the DNR regulation pursuant to which the defendant seized the plaintiff's nets violates rights possessed by the plaintiff under a treaty

between the Chippewa Indians and the United States. The plaintiff also seeks compensatory and punitive damages from the defendant pursuant to 42 U.S.C. § 1983 for an alleged deprivation of due process by the defendant under color of law.

The plaintiff's motion seeks summary judgment finding that: (1) the plaintiff has the right to fish commercially free of state regulation pursuant to the treaty between the Chippewa Indians and the United States; (2) the regulations of the DNR relied upon by the defendant are invalid; and (3) the defendant does not enjoy immunity from liability in this action.

The defendant's cross-motion for summary judgment purports to seek "declarations" that certain theories relied upon by the plaintiff are erroneous. Since the defendant has not filed a counterclaim for relief, however, a declaratory judgment may not be entered in the defendant's favor. Thus, the defendant's motion will be treated as seeking dismissal of the plaintiff's theories opposed by the defendant.

The defendant does not dispute that as a general rule the plaintiff and the tribe of which he is a member may fish in Lake Superior free of state regulation pursuant to the treaty of September 30, 1854, between the United States and the Chippewa Indians, 10 Stat. 1109. Article 2 of the treaty provides that the United States will "set apart and withhold from sale, *for the use of* the Chippewas of Lake Superior" certain designated tracts of land (emphasis added). Relying on established principles of treaty interpretation to interpret the phrase "for the use of," the Wisconsin supreme court in *State v. Gurnoe,* 53 Wis.2d 390, 192 N.W.2d 892 (1972), held that it was the intention of the parties to the treaty for the Chippewa to retain fishing rights in Lake Superior under the 1854 treaty.

The primary dispute in this case concerns the permissible extent of state regulation of the fishing rights of the Chippewa and the manner in which such regulation, if proper, must be exercised. In *Gurnoe,* the Wisconsin court held that the state may exercise its police power to control fishing in Lake

Superior by Chippewa claiming rights under the 1854 treaty, citing *United States v. Winans,* 198 U.S. 371, 25 S.Ct. 662, 49 L.Ed. 1089 (1905); *Tulee v. Washington,* 315 U.S. 681, 62 S.Ct. 862, 86 L.Ed. 1115 (1952); and *Kake Village v. Egan,* 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962). Relying on *Puyallup Tribe v. Department of Game of Washington,* 391 U.S. 392, 88 S.Ct. 1725, 20 L.Ed.2d 689 (1968), the court ruled that the state must show that "regulations it seeks to enforce against the Chippewa are reasonable and necessary to prevent a substantial depletion of the fish supply" or are "necessary in the exercise of other valid police powers." 53 Wis.2d at 410, 192 N.W.2d at 902.

The Wisconsin court also ruled that the treaty rights of the Chippewa extend only to methods of gathering fish which "reasonably conform to the aboriginal methods and should not be extended to modern methods not intended by the 1854 treaty." 53 Wis.2d at 411, 192 N.W.2d at 902. On motion for rehearing, the court modified its original opinion to read as follows:

"Such fishing must also reasonably conform to those types and methods of gathering fish employed by the Chippewa at the time of the 1854 treaty or to such modern types and methods as are reasonably consistent with those used at the time of the treaty." 53 Wis.2d at 412, 192 N.W.2d at 902.

In his motion for summary judgment, the plaintiff seeks a declaration that he has the right to fish commercially in Lake Superior free of state regulation pursuant to the 1854 treaty. The defendant argues in response that the plaintiff cannot claim protection under the 1854 treaty because the method of fishing he employed was not reasonably consistent with fishing methods used in 1854. The defendant urges that improvements in fishing technology since 1854 utilized by the plaintiff, including the use of powered boats, nylon nets, and electronic depth-sounding devices cannot be used by Chippewa claiming protection under the 1854 treaty. The defendant has filed a motion that judicial notice be taken

of certain historical facts concerning these improvements in fishing technology and proposes that at trial the jury be instructed as to such facts and be instructed to render a verdict on the question whether the fishing methods used by the plaintiff are consistent with the methods used at the time of the 1854 treaty. If the jury finds that the modern methods used by the plaintiff are inconsistent, the defendant intends to seek a ruling from the court that the plaintiff as a matter of law was not fishing under protection of the treaty at the time in question.

■ I find the defendant's position in this regard untenable. In my judgment, the plaintiff's fishing methods, whether modern or aboriginal, are protected by the 1854 treaty. The language of the treaty simply states that certain lands would be held "for the use of" the Chippewa Indians of Lake Superior. As noted by the Wisconsin court in *Gurnoe,* this treaty language was intended by the parties to permit the Chippewa to retain fishing rights in Lake Superior. However, nothing in this language suggests that the Chippewa's use of Lake Superior for fishing must be restricted to aboriginal fishing methods. The well-established principle of treaty interpretation that language in treaties with Indians should never be construed to their prejudice, *Antoine v. Washington,* 420 U.S. 194, 199, 95 S.Ct. 944, 43 L.Ed.2d 129 (1975), would preclude such an interpretation of the treaty language in question. The improvements in fishing technology appear to be relevant to the necessity for and reasonableness of state regulation of fishing, but I am unable to find that they are relevant to the coverage of the treaty, so long as the activity in which the plaintiff is engaged is unmistakably fishing. Accordingly, I reject the defendant's argument that the plaintiff was not fishing under the protection of the treaty.

■ I am also unable to accept the plaintiff's unqualified assertion that he is entitled to fish in Lake Superior free from state regulation. The United States Supreme Court has held that state regulation of off-reservation fishing rights is permissible under certain circumstances. *Puyallup Tribe v. Department of Game of Washington,* 391 U.S. 392, 88 S.Ct. 1725, 20 L.Ed.2d 689 (1968).

In *Puyallup,* the Court interpreted a treaty provision which reserved to the Puyallup tribe the right to fish off its reservation " 'at all usual and accustomed places.' " Nothing was stated in the treaty about the manner in which the fishing could be conducted. The court ruled that the right "to fish 'at all usual and accustomed' places may, of course, not be qualified by the State . . .. But the manner of fishing, the size of the take, the restriction of commercial fishing, and the like may be regulated by the State in the interest of conservation, provided the regulation meets appropriate standards and does not discriminate against the Indians." 391 U.S. 392, 398, 88 S.Ct. 1725, 1728, 20 L.Ed.2d 689. In a subsequent decision, the Court defined the "appropriate standards" to mean that the state must show that its regulation is a reasonable and necessary conservation measure and that its application to Indians is a necessary conservation measure. *Antoine v. Washington,* 420 U.S. 194, 207, 95 S.Ct. 944, 43 L.Ed.2d 129 (1975).

Like the treaty in *Puyallup,* the instant treaty concerns fishing rights that are not exclusive, i. e. non-Indians may also fish Lake Superior, and the treaty language is silent on the question of the manner in which fishing may be done and whether it may be done for commercial purposes. Accordingly, the state may not bar the Chippewa's right to fish Lake Superior, but the state may regulate in a nondiscriminatory fashion the time and manner of Indian fishing if reasonable and necessary for conservation of fish and if application of the regulation to the Chippewa is necessary in the interest of conservation. I therefore decline to grant the plaintiff's request for partial summary judgment declaring that he may fish Lake Superior free from state regulation.

■ The next major area of controversy concerns the timing of the state's showing

that a given regulation is proper. The plaintiff argues that the state must make a showing that a proposed regulation is reasonable and necessary to prevent a substantial depletion of the fish species in question *before* the regulation may be enacted or enforced. The defendant argues that the reasonableness and necessity for a regulation need not be shown until the validity of the regulation is raised as a defense to a civil enforcement proceeding or a criminal prosecution. The defendant also suggests that the regulation can be tested during the rule-making process under the Wisconsin Administrative Procedure Act, ch. 227, Wis. Stats.

The plaintiff relies on *United States v. State of Washington,* 384 F.Supp. 312 (W.D. Wash.1974), *aff'd* 520 F.2d 676 (9th Cir. 1975), cert. denied 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976), in which the United States, on its own behalf and as trustee for certain Indian tribes, sued the state of Washington for declaratory and injunctive relief concerning the state's regulation of off-reservation treaty right fishing. The court found unlawful the application of various state laws and regulations to the tribes, ruling that:

"Every regulation of treaty right fishing must be strictly limited to specific measures *which before becoming effective* have been established by the state, either to the satisfaction of all affected tribes or upon hearing by or under the direction of this court, to be reasonable and necessary to prevent demonstrable harm to the actual conservation of fish." 384 F.Supp. at 342 (emphasis supplied).

The court did not identify the basis for its ruling that the required showing of reasonableness and necessity for the regulation must be made *before* the regulation becomes effective. None of the Supreme Court cases discussed in the decision were cited in support of this requirement. The court did not suggest that due process or proper administrative procedure compelled such a result. In other contexts, due process is not understood to require that the state demonstrate the validity, constitution-

al or otherwise, of each statute or regulation it enacts before such statute or regulation becomes effective. Indeed, the well-established precept that legislative enactments are presumed constitutional rests on the opposite premise.

Apparently, the requirement in the court's decree that the state's showing be made before the regulations become effective was deemed appropriate in the court's equitable discretion. In the absence of some persuasive authority for application to this case of the requirement for an advance showing, I am unwilling to apply *United States v. State of Washington,* supra, to the case at bar. The suggestion of the defendant that the showing may be made in an enforcement proceeding, during the rule-making process, or as a defense to the argument of invalidity in the instant proceeding appears to be correct. Accordingly, the defendant's motion for partial summary judgment on this issue will be granted, and the plaintiff's motion will be denied.

■ The plaintiff also relies on *United States v. State of Washington,* supra, for the proposition that the Wisconsin DNR order is invalid because the DNR did not first eliminate non-Indian fishing in an effort to preserve the fish species in question and because the DNR did not attempt to negotiate an agreement with the Chippewa whereby they would regulate their own fishing activities. Again, I am not persuaded that *United States v. State of Washington* compels these requirements as conditions precedent to effective regulation of the Chippewa fishing rights. Although both such requirements were imposed in *United States v. State of Washington,* I do not believe that this result is compelled by any provision of the Constitution or by the terms of the treaty in question. Thus, the defendant's motion for partial summary judgment on these issues will be granted, and the plaintiff's motion will be denied.

■ The plaintiff also argues that the DNR regulation is invalid as a matter of substantive due process because the department failed to show that the regulation is reasonable and necessary to prevent sub-

stantial depletion of the fish supply. The plaintiff's substantive due process argument is no different from his other arguments described above. I therefore find that the defendant's partial summary judgment motion should be granted and that the plaintiff's motion should be denied also in this respect.

The plaintiff's motion for partial summary judgment also seeks a ruling that the defendant is not immune from this suit. The defendant does not contest the plaintiff's arguments that the court has personal and subject matter jurisdiction. However, the defendant argues that he is entitled to the qualified good faith immunity described in *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) and *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

█ In *Wood,* the court held that a qualified immunity from liability for damages is available to members of the executive branch of government. In *Scheuer v. Rhodes,* 416 U.S. 232, 247, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974), the court stated that the extent of the immunity in each case is "dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based." The immunity is unavailable under two circumstances: (1) if the official knew or reasonably should have known that the action he took within the sphere of official responsibility would violate the rights of the person affected; or (2) if the official took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the person. *Wood,* supra, 420 U.S. at 322, 95 S.Ct. at 1001. The first circumstance is sometimes referred to as the "objective" test and the second circumstance the "subjective" test.

The plaintiff contends that he is entitled to summary judgment as a matter of law finding that the defendant is not immune under the first, or "objective," test outlined in *Wood;* the plaintiff urges that "as a matter of law defendant should have known that the actions which he took were an unconstitutional deprivation of plaintiff's rights without due process of law."

█ In my judgment, there is no issue of material fact and judgment should be granted as a matter of law to the defendant finding that he could not reasonably be required to have known that the regulation pursuant to which he acted was unconstitutional. For the reasons stated earlier in this decision, the regulation is not facially invalid merely because the DNR did not follow the prescriptions set forth in *United States v. State of Washington,* supra. In addition, since the reasonableness and necessity for the DNR regulation has not yet been made, the right of the Chippewa to be free from this type of regulation cannot be said to be "clearly established" at this time, much less at the time the defendant acted. *Procunier v. Navarette,* 434 U.S. 555, 78 S.Ct. 855, 55 L.Ed.2d 24 (1978).

█ However, the parties do not dispute that the second test described in *Wood* —where a state official acts with the malicious intention to deprive another of his constitutional rights—is not susceptible to resolution by summary judgment. Thus, only to the extent that the plaintiff relies on the objective test for defeating the defendant's claim of immunity, the defendant's motion for summary judgment will be granted.

The defendant has also filed a "first" and "second" motion in limine and an amended motion asking that the court take judicial notice of certain facts. At this juncture, I believe these motions should be denied without prejudice. The disposition of the cross-motions for summary judgment has rendered portions of the motions moot. To the extent that the defendant deems it advisable to pursue these motions, they may be raised at trial where they can be considered in the context of the other evidence offered.

Therefore, IT IS ORDERED that the plaintiff's motion for partial summary judgment be and hereby is denied.

IT IS ALSO ORDERED that the defendant's motion for partial summary judgment

dismissing the plaintiff's claim that the Wisconsin Department of Natural Resources must demonstrate the reasonableness and necessity for NR 26.23, Wis.Admin.Code (1975), before its enactment be and hereby is granted.

IT IS FURTHER ORDERED that the defendant's motion for partial summary judgment dismissing the plaintiff's claims that before enacting regulations the Wisconsin Department of Natural Resources must (1) negotiate an agreement with the Chippewa whereby the Chippewa would regulate their own fishing activities, and (2) attempt to eliminate non-Indian fishing in an effort to preserve fish be and hereby is granted.

IT IS FURTHER ORDERED that the defendant's motion for partial summary judgment dismissing the plaintiff's claim that the defendant is not immune from liability for damages is granted in part and denied in part.

IT IS FURTHER ORDERED that the defendant's first and second motions in limine be and hereby are denied, without prejudice.

IT IS FURTHER ORDERED that the defendant's motion to take judicial notice be and hereby is denied, without prejudice.