STATE of Wisconsin, Plaintiff-Appellant and
Cross-Respondent,

v.

Cecil M. PETERSON, Defendant-Respondent and
Cross-Appellant.

STATE of Wisconsin, Plaintiff-Appellant and
Cross-Respondent,

v.

Leonard M. PETERSON, Defendant-Respondent and
Cross-Appellant.

Court of Appeals

*Nos. 79–1325, 79–1326. Argued June 30, 1980.—
Decided August 19, 1980.*
(Also reported in 297 N.W.2d 52.)

For the appellant the cause was argued by *Mary V. Bowman,* assistant attorney general, with whom on briefs was *Bronson C. La Follette,* attorney general.

For the respondents there was a brief and oral argument by *John M. Wiley* of Wausau.

Before Donlin, P.J., Foley, J., and Dean, J.

FOLEY, J. The Wisconsin Supreme Court held in *State v. Gurnoe,* 53 Wis.2d 390, 192 N.W.2d 892 (1972), that the state can enforce its conservation regulations against Indian fishermen fishing in Lake Superior if it can show that the enforcement of the regulations against Indian fishermen is reasonable and necessary to prevent a substantial depletion of the fish supply. The issue in this case is when and how the state must prove the reasonableness and necessity of enforcement. We conclude

that the most efficient, fair and effective procedure is for the state to present its proof at a hearing after a citation is issued, but before a trial on the merits.

Leonard and Cecil Peterson were cited in February, 1979, pursuant to sec. 23.53, Stats., with transporting untagged lake trout contrary to sec. NR 25.13(1)(a) of the Wisconsin Administrative Code. The Petersons moved for dismissal, contending that the court lacked jurisdiction because they are enrolled members of the Red Cliff Band of Lake Superior Chippewa Indians. The state made a motion for an evidentiary hearing to prove that enforcement of sec. NR 25.13(1)(a) against Indian fishermen is reasonable and necessary to prevent a substantial depletion of lake trout in Lake Superior. The trial court denied both motions, ruling that it had jurisdiction over the Petersons and that the state must prove reasonableness and necessity as a part of the violation. The court also decided that the determination of reasonableness and necessity should be left to the jury.

■ The state contends on appeal that after an Indian fisherman is cited for a violation of a state conservation regulation, but before a trial on the merits, a hearing should be held at which the state should prove reasonableness and necessity. We agree with the state's position because we conclude that before the court can obtain subject matter jurisdiction to enforce DNR fishing regulations against Indian fishermen, the state must first prove that the enforcement of its regulations against Indian fishermen is reasonable and necessary to prevent a substantial depletion of the fish supply. We therefore reverse the order of the trial court denying the state's motion for a hearing before trial.

■ The Petersons contend on cross-appeal that the trial court lacks jurisdiction because the state must prove the

reasonableness and necessity of enforcement of the regulation against Indian fishermen in some sort of special proceeding before it can cite any Indian fisherman with a violation of the regulation. Since the state has not done so here, the Petersons argue that the citations must be dismissed. We do not agree that *Gurnoe* requires such a procedure, and we do not see how such a procedure would be workable in a state court. We therefore affirm the trial court's order denying the Petersons' motion to dismiss because of the lack of proof of reasonableness and necessity before the issuance of the citations against the Petersons.

We have been presented with three solutions to the problem of how and when the state must prove reasonableness and necessity of enforcing conservation regulations against Indian fishermen as required by *Gurnoe:*

1. The Petersons' approach, which was originated by a federal district court in *United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974), and requires court approval of any state conservation regulation before any Indian fisherman can be cited for a violation of that regulation.
2. The trial court's approach of having the state prove reasonableness and necessity as a part of the violation and to the jury.
3. The state's approach, which requires that after the issuance of a citation, but before trial, a hearing be held at which the state must prove reasonableness and necessity before being allowed to proceed to a trial on the merits.

We conclude that the state's approach presents the only fair and workable procedure for implementing *Gurnoe*.

## THE PETERSONS' APPROACH

The Petersons ask that we adopt the approach taken by a federal district court sitting in the State of Wash-

ington in *Washington, supra.* In *Washington,* the United States, acting as trustee for a group of Indian tribes, sued the state seeking a declaratory judgment as to the state's right to enforce its conservation regulations against Indian fishermen. The court ruled that Washington could not cite Indian fishermen for violations until it proved that its regulations had a valid conservation purpose. The court retained jurisdiction over the case and ordered the state to annually prove the necessity of its conservation regulations. The Petersons want us to establish a similar procedure in state court without explaining how this can possibly be done. We note that the federal court for the Eastern District of Wisconsin has already declined to set up a procedure of this type in a federal court. *Peterson v. Christensen,* 455 F. Supp. 1095 (E.D. Wis. 1978).

In *Washington,* the federal district court obtained jurisdiction over the tribes because the United States began the suit on behalf of the tribes themselves. The State of Wisconsin cannot bring a suit against the Red Cliff Band of Lake Superior Chippewa Indians in state court because of the doctrine of tribal immunity. *State ex rel. California Department of Fish and Game v. Quechan Tribe of Indians,* 595 F.2d 1153 (9th Cir. 1979). The state could not therefore force the tribe to adjudicate the issue of reasonableness and necessity and could not therefore enforce its regulations unless the tribe sued it in a declaratory judgment action.

Although a state court may be able to establish some type of procedure for annual review, the court must first get jurisdiction. As we have already stated, the state cannot sue the tribe and since under *Washington* no individual Indian fisherman can be cited without prior justification for the state regulation, the court could not

obtain jurisdiction over individual fishermen either. Furthermore, even if the matter were adjudicated as to one fisherman, the judgment would not have a binding effect on all Indian fishermen. The procedure is simply not possible in a state court.

Even if the procedure were possible, we do not feel it would be workable. A federal district judge sitting in the Eastern District of Wisconsin has already refused to become the fishmaster for the State of Wisconsin, and we decline to impose that burden on a Wisconsin circuit court judge. A state circuit court has neither the resources nor the time to continuously oversee the well-being and preservation of all the fish swimming in Wisconsin's lakes and rivers that may be fished by Indian fishermen.

The Petersons contend that unless some sort of procedure is established for proof of reasonableness and necessity prior to the citation of Indian fishermen, they will have no way of knowing which regulations can be applied to them. First, it would be reasonable for Indian fishermen to assume that all conservation regulations will be applied to them. If, however, an Indian fisherman doubts that a certain conservation regulation can be justified as required by *Gurnoe* and does not wish to risk the violation and citation process, that fisherman or the tribe can seek declaratory rulings under secs. 227.05 and 227.06, Stats. Neither *Gurnoe* nor the due process clauses of the United States or Wisconsin Constitutions require a procedure like that adopted in *Washington*. *See Peterson, supra.*

## THE TRIAL COURT'S APPROACH

The trial court ruled that the decision on the reasonableness and necessity of enforcing sec. NR 25.13 (1) (a) against Indian fishermen should be left to the jury. Sec-

tion 23.69, Stats., the applicable procedural statute used in DNR forfeiture actions, provides that "[a]ny motion which is capable of determination without the trial of the general issue shall be made before trial." This statute clearly indicates that if a decision on a motion will make a trial unnecessary, it should be made and decided before trial. The Petersons' motion was made before trial and if it had been decided adversely to the state, there would have been no need for a trial. Section 23.69 requires that the motion should have been decided by the court before trial of the general issue.

Section 801.08(1), Stats., an analogous civil procedure statute, also provides for a pretrial determination of certain jurisdictional motions. Section 802.06(4), Stats., another civil procedure motions statute, provides that certain motions generally should be heard before trial unless the trial court determines that deferral until trial would be proper. In DNR forfeiture actions where the *Gurnoe* criteria must be met, we conclude that the better practice would always be to determine reasonableness and necessity prior to trial.

We conclude that an Indian fisherman should not be subjected to a trial on the merits if the matter can be disposed of before trial. The statutes cited indicate that this is the procedure preferred by the legislature. We also conclude that a trial court is better qualified than a jury to make a well-reasoned and fair determination as to the reasonableness and necessity of enforcing DNR regulations against Indian fishermen.

## THE STATE'S APPROACH

As we have already stated, we agree with the state that its right to enforce a regulation against Indian fishermen should be determined by the court before trial.

We feel this is the only fair and workable procedure. Under this procedure, any Indian fisherman charged would have the opportunity to have the state prove the reasonableness and necessity of enforcing the regulation against Indian fishermen before being subjected to a trial. This procedure also contains built-in assurances that the determination of reasonableness and necessity will be kept up-to-date with changing fish populations. Since reasonableness and necessity of enforcing a regulation against Indian fishermen is an element of subject matter jurisdiction, the burden is on the state to request a hearing on the issue, and on remand the trial court should hold an evidentiary hearing and rule on the issue.

The only other question presented by this case is by what burden of proof the state must prove reasonableness and necessity. The Petersons contend that the state must prove reasonableness and necessity by evidence that is clear, satisfactory and convincing. This is the standard that is to be applied in the proof of the elements of the offense. Section 23.76, Stats.

As the reasonableness and necessity of the enforcement of a regulation against Indian fishermen to prevent substantial depletion of the fish supply is not an element of the offense, we conclude that this burden is not the proper one. Proof of reasonableness and necessity is a prerequisite to enforcement. It is an element of the court's subject matter jurisdiction. *See Puyallup Tribe, Inc. v. Department of Game,* 433 U.S. 165 (1977). A conclusion that the trial court has jurisdiction must be supported by a preponderance of the evidence. *Afram v. Balfour, Maclaine, Inc.,* 63 Wis.2d 702, 218 N.W.2d 288 (1974). This is the burden the state must meet on remand. The trial court should make findings of fact and then conclude as a matter of law whether the en-

forcement of sec. NR 25.13 (1) (a) against Indian fishermen is reasonable and necessary to prevent a substantial depletion of the trout supply in Lake Superior.

*By the Court.*—Order appealed reversed and cause remanded with directions; order cross-appealed affirmed.