STATE of Wisconsin, Plaintiff-Appellant,

v.

John LEMIEUX, Defendant-Respondent.
[Case No. 81–713.]

STATE of Wisconsin, Plaintiff-Appellant,

v.

Peter LEMIEUX, Defendant-Respondent.
[Case No. 81–714.]†

Court of Appeals

*Nos. 81–713, 81–714. Submitted on briefs October 19, 1981.—
Decided February 16, 1982.*
(Also reported in 317 N.W.2d 166.)

† Petition to review granted.

For the appellant there were briefs by *Bronson C. La Follette*, attorney general, and *John D. Niemisto*, assistant attorney general.

For the respondents there was a joint brief by *Michael F. Fauerbach* and *Santini, Jacobs, McDonald and Silc, P.C.*, of Ashland, for John Lemieux; and *James M. Jannetta, Kathryn L. Tierney* and *Wisconsin Judicare, Inc.*, of Wausau, for Peter Lemieux.

Before Foley, P.J., Dean and Cane, JJ.

FOLEY, P.J. The state contends that the trial court erred when it dismissed citations issued to John and Peter Lemieux for their violation of sec. 29.224(2), Stats.[2] Section 29.224(2) prohibits the possession or

---

[2] Section 29.224(2), Stats., states:

No person may possess, place or transport in or on any aircraft, vehicle or automobile any firearm, bow or crossbow unless such bow or crossbow is unstrung or enclosed within a carrying case or such firearm is unloaded and enclosed within a carrying case.

At the time this action was commenced, violations of § 29.224(2) were punishable "by a forfeiture of not more than $100 and, in addition, by the payment of a natural resources assessment equal to 75% of the amount of the forfeiture." Section 29.99(4), Stats. (1979). Presently, violations of § 29.224(2) are still punishable by a forfeiture of not more than $100, § 29.99(4), Stats., and the imposition of a natural resources assessment is mandated by § 29.997(1), Stats. Section 631y, ch. 20, 1981 Wis. Laws.

transportation of uncased or loaded firearms in vehicles. The court held that the state did not have jurisdiction to enforce sec. 29.224 against enrolled members of an Indian tribe within the boundaries of their reservation. Because the state has failed to establish its subject matter jurisdiction, we affirm.

The parties have stipulated to the facts. The Lemieuxs are enrolled members of the Bad River Band of Lake Superior Chippewa Indians. Each admits possessing an uncased and loaded firearm while in a vehicle on a public road within the exterior boundaries of the Bad River Indian Reservation.

In granting the Lemieuxs' motion to dismiss, the trial court concluded that the main intent of sec. 29.224(2) is to prevent hunting from vehicles. The court concluded that the statute could not be enforced against tribal members because its enforcement would infringe upon the hunting rights granted to the Bad River Band by treaty in 1854.[3]

The state first argues that irrespective of whether sec. 29.224(2) is a hunting or a safety regulation, 25 U.S.C. § 311 (1963)[4] grants the state jurisdiction over violations of sec. 29.224(2) occurring on highway rights-of-way within the boundaries of the Bad River Reservation. This argument is based in large part upon the interpre-

---

[3] The Band's right to hunt and fish within the confines of the Bad River Reservation has been recognized in *State v. Gurnoe*, 53 Wis. 2d 390, 192 N.W.2d 892 (1972), and *State v. Johnson*, 212 Wis. 301, 249 N.W. 284 (1933), and is not at issue here.

[4] Act of March 3, 1901, ch. 832, § 4, 31 Stat. 1084 (codified at 25 U.S.C. § 311 (1963)) provides in material part:

The Secretary of the Interior is authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper State or local authorities for the opening and establishment of public highways, in accordance with the laws of the State or Territory in which the lands are situated, through any Indian reservation . . . .

tation given 25 U.S.C. § 311 (1963) in *State v. Tucker,* 237 Wis. 310, 296 N.W. 645 (1941), which held that the federal government's grant of a highway right-of-way to the state extinguished Indian title to that right-of-way and conferred upon the state the jurisdiction necessary for the maintenance and control of the highway.

We agree with the state's assertion that sec. 29.224(2) serves public safety functions that would permit its enforcement even though it might conceivably infringe upon the ability of tribal members to hunt from vehicles on public roads. The state, however, concedes that it possesses no federally granted right-of-way for the road on which these particular offenses occurred.[5] Accordingly, neither 25 U.S.C. § 311 (1963) nor *Tucker* are applicable to the present controversy.[6]

The state next argues that even though sec. 29.224 (2) is not punishable by criminal sanctions, it is, never-

[5] The state has offered to supply this court with evidence that the township in which the road is located has assumed financial responsibility for the road's maintenance and that the Band consented to the road's establishment. It was, however, the state's obligation to prove its jurisdiction. *State v. Peterson,* 98 Wis. 2d 487, 495, 297 N.W.2d 52, 55 (Ct. App. 1980). In addition, it is doubtful that the township's maintenance of the road vests title to the road in either it or the state. *Cf. United States v. Schwarz,* 460 F.2d 1365, 1371–72 (7th Cir. 1972) (adverse possession under a state statute of limitations cannot run against Indians if the land is not alienable by them).

[6] Although *Tucker* has been criticized, *see In re Fredenberg,* 65 F. Supp. 4 (E.D. Wis. 1946), persuasive arguments also exist in support of its holding. *See State ex rel. v. District Court of the Ninth Judicial District,* 617 P.2d 1056, 1073–78 (Wyo. 1980) (Rooney, J., dissenting) ; *see also Konaha v. Brown,* 131 F.2d 737, 739 (7th Cir. 1942) (recognizing but not deciding that "the grant of a right to maintain a highway must carry with it certain implications respecting the protection of said highway against dep-

theless, a "criminal-prohibitory" regulation that may be enforced under Public Law No. 280, 18 U.S.C. § 1162(a) (1966),[7] which confers jurisdiction upon the state over all criminal offenses committed by or against Indians in Indian country. This argument is drawn from cases where the scope of a state's criminal jurisdiction over reservation activities has been analyzed according to whether the statute sought to be enforced is "criminal-prohibitory" or "civil-regulatory" in nature. Under this analysis, statutes making violations of some acts punishable by penal sanctions have been held unenforceable against Indians because the statutes did not totally prohibit, but merely regulated, certain aspects of otherwise legal conduct. See Seminole Tribe v. Butterworth, 658 F.2d 310 (5th Cir. 1981), and Oneida Tribe v. State of Wisconsin, 518 F. Supp. 712 (W.D. Wis. 1981), which held that state bingo laws could not be applied to on-reservation bingo games.

While we agree that sec. 29.224(2) prohibits rather than merely regulates the possession of uncased and loaded firearms in vehicles and that it would be enforceable if it were punishable by penal sanctions, we cannot conclude that it is an offense over which the state has acquired criminal jurisdiction under Pub. L. 280. The purpose of construing ostensibly criminal statutes as civil regulatory statutes is to prohibit a state from extending its jurisdiction beyond that granted by Congress simply by making a wide range of conduct punishable by penal sanctions. See United States v. Marcyes, 557 F.2d 1361, 1364 (9th Cir. 1977) (analysis used to determine applicability of federal Assimilative

redations."). We express no opinion as to Tucker's continued vitality in instances where the state possesses a federally granted right-of-way.

[7] Act of August 15, 1953, ch. 505, § 2, 67 Stat. 588 (codified as amended at 18 U.S.C. § 1162 (1966)).

Crimes Act to state statutes.) Absent any authority in which civil statutes have been deemed "criminal" for purposes of Pub. L. 280 jurisdiction and in light of the policy underlying the construction of criminal statutes set forth in *Marcyes*, we cannot conclude that the state has jurisdiction to enforce sec. 29.224(2) under the criminal jurisdiction grant of Pub. L. 280.

Public Law 280's provisions, appearing in 28 U.S.C. 1360 (1976),[8] granting Wisconsin jurisdiction over "civil causes of action between Indians or to which Indians are parties," also do not give the state jurisdiction over violations of sec. 29.224(2). In *Bryan v. Itasca County*, 426 U.S. 373, 385 (1976), the Court concluded that "the primary intent of § 4 [of Pub. L. 280] was to grant jurisdiction over private civil litigation involving reservation Indians in state court." Accordingly, the Court struck down Itasca County's imposition of personal property taxes on the on-reservation personal property of a tribe's member. Similarly, Pub. L. 280's grant of civil jurisdiction has been held insufficient to permit the application of zoning and building code regulations to land within Indian reservations. *See United States v. County of Humboldt*, 615 F.2d 1260 (9th Cir. 1980); *Santa Rosa Band v. Kings County*, 532 F.2d 655 (9th Cir. 1975). In light of *Bryan*, we conclude that Pub. L. 280's grant of civil jurisdiction does not provide a basis for the state's enforcement of sec. 29.224(2).

The state's remaining contention is that it possesses jurisdiction independent of that granted by Pub. L. 280. It argues that because no federal law specifically preempts the state from enforcing sec. 29.224(2), and because the state's enforcement of sec. 29.224(2) would not infringe on the right of the Band to be self-govern-

---

[8] Act of August 15, 1953, ch. 505, § 4, 67 Stat. 589 (codified as amended at 25 U.S.C. § 1360 (1976)).

ing, sec. 29.224(2) may be enforced against members of the Band.

We conclude that the state's power to enforce sec. 29.224(2) does not depend upon whether that section's enforcement would infringe upon the Band's right to be self-governing, but depends instead upon applicable federal treaties and statutes. " 'State laws generally are not applicable to tribal Indians on an Indian reservation except where Congress has expressly provided that State laws shall apply.' " *McClanahan v. State Tax Commission of Arizona*, 411 U.S. 164, 170–71 (1973), *quoting* U.S. Dept. of the Interior, Federal Indian Law 845 (1958). Only in the absence of governing congressional acts are questions of a state's jurisdiction analyzed according to whether state action infringes on the right of reservation Indians to be self-governing. *McClanahan*, 411 U.S. at 171–72; *see also Crow Tribe v. State of Montana*, 650 F.2d 1104, 1108–09 (9th Cir. 1981).

The boundaries of Wisconsin's jurisdiction over tribal Indians have been defined by federal treaties[9] and statutes. In the absence of a specific federal grant of jurisdiction, the presumption is that the state possesses no jurisdiction. We therefore conclude that the state has not established its jurisdiction to enforce sec. 29.224(2). To conclude otherwise would effectively give the state civil jurisdiction in excess of that granted by the federal government.[10]

*By the Court.*—Judgment affirmed.

[9] Because we see nothing in the treaty of 1854 that would sustain the state's assertion of jurisdiction, we look only to applicable federal statutes.

[10] Although we conclude that in this case the extent of the state's civil jurisdiction is that set forth in Pub. L. 280, as construed in *Bryan v. Itasca County*, 426 U.S. 373 (1976), we note that in this particular case the result compelled by *Bryan* is some-

what anomalous. As noted in *Bryan,* 426 U.S. at 379, the primary concern of Congress in granting criminal jurisdiction to Pub. L. 280 states "was . . . the problem of lawlessness on certain Indian reservations, and the absence of adequate tribal institutions for law enforcement." We also note that in *Bryan,* as well as in *United States v. County of Humboldt,* 615 F.2d 1260 (9th Cir. 1980), and *Santa Rosa Band v. Kings County,* 532 F2d 655 (9th Cir. 1975), the civil laws sought to be enforced would have impaired the tribal members' title to federally allotted lands. Insofar as the enforcement of § 29.224(2) would not impair the Band's title to public roads within the reservation, and because § 29.224 (2)'s enforcement would serve public safety functions, the apparent sweep of *Bryan's* holding may not be without limitation. *Cf. People of South Naknek v. Bristol Bay Borough,* 466 F. Supp. 870, 879 (D.C. Alaska 1979) (Pub. L. 280 intended as a grant of jurisdiction, not as a prohibition on exercising jurisdiction a state would otherwise possess; *Bryan* does not turn Pub. L. 280 into a prohibitory statute).

    † Petition to review granted.