STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard LOWE, Defendant-Appellant.
[Case Nos. 81–1975, 81–1976.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Kenneth M. MOSAY, Defendant-Appellant.
[Case Nos. 81–1977, 81–1978.]

Court of Appeals

*Nos. 81–1975, 81–1976, 81–1977, 81–1978. Submitted on briefs
June 21, 1982.—Decided November 16, 1982.*
(Also reported in 327 N.W.2d 166.)

For the appellants the cause was submitted on the brief of *Wisconsin Judicare, Inc.*, and *James M. Janetta* of Wausau, and *James H. Taylor* and *Benson & Taylor* of Siren.

For the respondent there was a brief by *John E. Schneider*, Polk County District Attorney, of Balsam Lake.

Before Foley, P.J., Dean and Cane, JJ.

FOLEY, P.J. Richard Lowe and Kenneth Mosay appeal judgments convicting them of possession of game fish during the closed season and possession of a spear on Big Round Lake, Polk County, Wisconsin, in violation of sec. 29.39, Stats. and Wis. Admin. Code, sec. NR 20.07 (2). As enrolled members of the St. Croix band of Lake Superior Chippewa, we conclude that Lowe and Mosay have the same fishing rights in Big Round Lake that members of the Bad River and Red Cliff bands of Lake Superior Chippewa have in Lake Superior. *See State v. Gurnoe*, 53 Wis. 2d 390, 407–09, 192 N.W.2d 892, 900–01 (1971). Because the state must therefore prove that it has subject matter jurisdiction before it can convict Lowe and Mosay of the offenses charged, we reverse the judgments and remand these matters for a hearing as provided in *State v. Peterson*, 98 Wis. 2d 487, 495–96, 297 N.W.2d 52, 55 (Ct. App. 1980). *See also State v. Braun*, 103 Wis. 2d 617, 630, 309 N.W.2d 875, 881 (Ct. App. 1981).

Treaties and executive orders that do not specifically grant fishing rights to Indians have been interpreted by both the United States and the Wisconsin Supreme Courts to grant certain fishing rights. *Alaska Pacific Fisheries v. United States*, 248 U.S. 78, 90 (1918); *Gurnoe*, 53 Wis. 2d at 402, 192 N.W.2d at 897–98. Where there is no specific grant, the court must look to the intent of the parties to the treaty. To determine that in-

tent, the court must consider the history of the tribe or band. *Gurnoe,* 53 Wis. 2d at 403, 192 N.W.2d at 898.

The history of the St. Croix band shows that the United States and the band intended that the band have nonexclusive fishing rights in Big Round Lake. The St. Croix band, one of the many bands of Lake Superior Chippewa, has an extensive history of official dealings with the United States government. The first treaty of importance was the Treaty of Prairie du Chien in 1825,[1] through which the United States sought to establish peace between the Chippewa and the Sioux, who had been warring over hunting grounds. By this treaty, the United States recognized title in the St. Croix band to its aboriginal area, including Big Round Lake. *Minnesota Chippewa Tribe v. United States,* 19 Ind. Cl. Comm. 514 (1968).

The next major treaty to which the St. Croix band was a party was the Treaty of St. Peters in 1837.[2] The United States wanted large areas of Indian land in north central Wisconsin and east central Minnesota because it contained valuable pine timber and because the United States wanted to open the territory for white settlement. *See United States v. Bouchard,* 464 F. Supp. 1316, 1322 (W.D. Wis. 1978). Although the St. Croix band ceded its land to the United States in this treaty, it reserved the right to hunt, fish, and gather wild rice, at the pleasure of the President of the United States, on the ceded territory.[3] In return, the "United States agreed to pay annuities in the form of goods and money, to distribute money to half-breeds, and to pay some Indian debts to traders."[4]

---

[1] Treaty of August 19, 1825, 7 Stat. 272.

[2] Treaty of July 29, 1837, 7 Stat. 536.

[3] Treaty of July 29, 1837, 7 Stat. 536, art. V.

[4] *United States v. Bouchard,* 464 F. Supp 1316, 1323 (W.D. Wis. (1978)).

By the Treaty of La Pointe in 1842,[5] the Lake Superior Chippewa ceded more land to the United States. The St. Croix band was also a party to this treaty. Again, however, the Chippewa reserved the right to hunt and to exercise the other usual privileges of occupancy with respect to the ceded land until such time as the President required them to leave the land.[6]

Although President Zachary Taylor attempted to require the Chippewa to leave Wisconsin by issuing an executive order in 1850, the St. Croix band remained in its aboriginal area. The removal effort failed with other Chippewa as well. As a result, the Wisconsin legislature passed a memorial in 1854 requesting that the President rescind his 1850 order and allow the Wisconsin Chippewa to remain in the state. *Gurnoe*, 53 Wis. 2d at 397, 192 N.W.2d at 895. The Treaty of 1854 followed this memorial.

By the Treaty of 1854, the United States sought to obtain further cession of Chippewa land in Minnesota and also to establish homeland reservations for the Chippewa in Wisconsin. Although reservations were established for various Chippewa bands, the St. Croix band is not listed as a signatory to this treaty, and no provision was made for the St. Croix band. Because they had no reservation, the band members began to refer to themselves as the "Lost Band" and remained in their tribal homelands, surviving as best they could.[7]

The band had no further official dealings with the United States until 1909, when the United States Senate held hearings on Indian affairs. Several St. Croix band members testified at these hearings. Their testimony indicated that the band was still living its aboriginal life

---

[5] Treaty of October 4, 1842, 7 Stat. 591.

[6] *Id.*, art. II.

[7] N. Lurie, *Wisconsin Indians*, 21 (1980); E. Danzinger, Jr., *The Chippewas of Lake Superior*, 153 (1978).

in its aboriginal area.[8] Following the hearings, the Bureau of Indian Affairs directed the Secretary of the Interior to conduct an investigation of the St. Croix band.

W.M. Wooster conducted the investigation and reported that most of the "lost Chippewa Tribe" belonged to the band of Chief Buck, or Ai-yaw-banse, who signed the Treaty of 1854 as a chief of the Lac Court Orieilles band of Lake Superior Chippewa.[9] Wooster's preliminary report indicated that most of the St. Croix band members were living as squatters on public lands in Douglas, Burnett, Polk, and Washburn counties.[10] Wooster subsequently reported that the band had a settlement on Big Round Lake in Polk County.[11]

Congress responded to the Wooster reports by appropriating money annually between 1919 and 1934 to settle the St. Croix band's claim for not receiving land under the Treaty of 1854.[12] Then, in 1934, Congress passed the

[8] *Condition of Indian Affairs in Wisconsin: Hearings on Senate Resolution No. 263 Before the Committee on Indian Affairs, United States Senate*, 60th Cong., 2d Sess. 33–60 (1909).

[9] H.R. Doc. No. 1253, 63d Cong., 3d Sess. 2 (1914).

[10] *Id.* at 3.

[11] H.R. Doc. No. 1663, 63d Cong., 3d Sess. 5 (1915).

[12] 41 Stat. 3 (1919) provided in pertinent part:

For the purchase of subsistence supplies in relieving cases of actual distress and suffering among those needy St. Croix Indians of Wisconsin whose cases are referred to in report of January 30, 1915, transmitted by the Secretary of the Interior to the House of Representatives March 3, 1915, pursuant to the provisions of the Act of Congress of August 1, 1914 (Thirty-eighth Statutes at Large, pages 582 to 605), and printed as House Document Numbered 1663, Sixty-third Congress, third session, $1,000.

41 Stat. 408 (1920) provided in pertinent part:

That to carry out the provisions of the Chippewa treaty of September 30, 1854 . . . there is hereby appropriated, . . . the sum of $10,000, in part settlement of the amount, $141,000, found to be due and heretofore approved for the St. Croix Chippewa Indians of Wisconsin, whose names appear on the final roll prepared by the Secretary of the Interior pursuant to Act of August

Indian Reorganization Act[13] (IRA) in which it sought to establish a land base for tribes without land.[14] In order to meet this goal, Congress authorized the Secretary of the Interior to acquire land for tribes and also to proclam new Indian reservations. 25 U.S.C.A. §§ 465, 467 (West 1963).

In connection with forming a land acquisition program under the IRA, Charles Wisdom, a Bureau of Indian Affairs staff anthropologist, studied the Lake Superior Chippewa, including the St. Croix band. Wisdom reported that members of the St. Croix band were found in various counties and specifically noted that there was a settlement at Round Lake in Polk County. His report indicates that the United States did not give the St. Croix band any land under the original grant of reservations and that the band members moved to more remote areas as the white farmers made inroads into their territory. The band members broke into smaller, scattered bands and lived by hunting, fishing, ricing, and berrying.[15]

In his discussion of the problems of land acquisition, Wisdom reported that subsistence activities such as fishing, with which the Indians had been familiar for gen-

1, 1914 (Thirty-eighth Statutes at Large, pages 582 to 605), and contained in House Document Numbered 1663, said sum of $10,000 to be expended in the purchase of land or for the benefit of said Indians by the Commissioner of Indian Affairs.

This language was repeated in subsequent Bureau of Indian Affairs appropriation bills until the final installment was appropriated in 1934, when the amount was reduced to $1,000. 41 Stat. 1225 (1921); 42 Stat. 552 (1922); 42 Stat. 1174 (1923); 43 Stat. 390 (1924); 43 Stat. 1141 (1925); 44 Stat. 453 (1926); 44 Stat. 934 (1927); 45 Stat. 200 (1928); 45 Stat. 1562 (1929); 46 Stat. 279 (1930); 46 Stat. 1115 (1931); 47 Stat. 91 (1932); 47 Stat. 820 (1933); 48 Stat. 362 (1934).

[13] 48 Stat. 984, 25 U.S.C.A. §§ 461–92. (West Supp. 1963).

[14] S. Rep. No. 1080, 73d Cong., 2d Sess. 1 (1934).

[15] C. Wisdom, *Report on the Great Lakes Chippewa* 17 (1936).

erations, should be emphasized in choosing land for the Great Lakes Chippewa.[16] He recommended that the natural resources on Indian lands be reserved for use only by the Indians,[17] that contiguous plots of land be purchased at or near the areas where the groups were already living in order for the Indians to continue their subsistence activities, and that the natural resources continue to be used by the Indians.[18] Wisdom recommended that the land surrounding Big Round Lake be purchased for the St. Croix band, giving each family lake frontage.[19] After Wisdom's report and pursuant to the IRA, the United States purchased land for the St. Croix band with access to Big Round Lake. By proclamation, this land was declared and remains a reservation for the St. Croix band.[20]

Although the proclamation establishing the reservation does not specifically grant fishing rights in Big Round Lake to the St. Croix band, this was the intent of the United States in establishing the reservation. The band historically fished Big Round Lake. In recommending acquisition of the land for the reservation, Wisdom emphasized the importance of fishing to the band. The United States established a reservation "for the use and benefit of" the St. Croix band and located it to give the band access to Big Round Lake. It is logical and reasonable to infer that the parties intended to make the use of the lake a part of the band's treaty rights. *See Bouchard*, 464 F. Supp. at 1360.

With this clear indication of intent, no rule of construction would authorize a different interpretation of

[16] *Id.* at 3.
[17] *Id.* at 8.
[18] C. Wisdom, *supra* note 15, General Recommendations.
[19] C. Wisdom, *supra* note 15, Specific Recommendations.
[20] 3 Fed. Reg. 3015 (1938).

the proclamation. *See Gurnoe,* 53 Wis. 2d at 403, 192 N.W.2d at 898. The fact that the St. Croix band's reservation was established by a proclamation order rather than by a treaty does not permit a different result. In *Hynes v. Grimes Packing Co.,* 337 U.S. 86, 102–03 (1949), the Court upheld the power of the Secretary of the Interior, under a statute extending the IRA to Alaska, to establish a reservation and to confer nonexclusive use of an adjacent salmon fishery.

Although Lowe and Mosay, as enrolled members of the St. Croix band, have nonexclusive fishing rights in Big Round Lake, the state may still be able to enforce its fishing regulations against them. To do so, the state must show that enforcement is reasonable and necessary. *See Peterson,* 98 Wis. 2d at 489, 297 N.W.2d at 53; *Gurnoe,* 53 Wis. 2d at 410, 192 N.W.2d at 902. Because this question has not been presented to the trial court, we remand these matters for its further consideration.

*By the Court.*—Judgments reversed and causes remanded.