STATE, Respondent, vs. TUCKER, Appellant.

*February 6—March 11, 1941.*

312

For the appellant there were briefs by *Norman M. Littell* of Washington, D. C., assistant attorney general of the United States, *B. J. Husting,* of Mayville, United States attorney for the Eastern district of Wisconsin, *E. J. Koelzer* of Milwaukee, assistant United States attorney, and *Charles R. Denny, Norman MacDonald,* and *Marvin J. Sonosky,* all of Washington, D. C., attorneys for the department of justice, and oral argument by *Mr. Sonosky.*

For the respondent there was a brief by the *Attorney General* of Wisconsin, *William A. Platz,* assistant attorney general, and *O. B. Strossenreuther,* district attorney of Shawano county, and oral argument by *Mr. Platz* and *Mr. Strossenreuther.*

WICKHEM, J. The question is whether the state of Wisconsin may require defendant, a tribal Indian living on the Menominee Indian reservation, to register his motor truck and pay a registration fee for its operation over that portion of a state trunk highway which is within the exterior boundaries of the Menominee Indian reservation. Defendant contends that the United States government has sole juris-

diction over tribal Indians within this reservation, and that the grant of a right of way to the state to maintain a public highway through it has not brought Indian users of the right of way within the jurisdiction of the state.

The facts are not in dispute. Defendant is an enrolled member of the Menominee tribe of Indians and lives on the Menominee reservation, which is an unallotted reservation in tribal ownership. He was arrested on a portion of State Highway No. 47, which was entirely within the boundaries of the reservation. He operated his truck solely upon this portion of the highway. State Highway No. 47 was established across the reservation by permission of the secretary of the interior given pursuant to sec. 4, ch. 832, Act of March 3, 1901 (31 U. S. Stats. at L. p. 1084). The truck and trailer were the property of defendant and had never been registered in the office of the secretary of state as required by sec. 85.01, Wis. Stats. The equipment was being used to haul logs from one part of the reservation to another.

It was held in *State v. Rufus,* 205 Wis. 317, 237 N. W. 67, that Wisconsin courts have no jurisdiction to punish crimes committed by tribal Indians on Indian reservations in the absence of legislation by congress conferring such jurisdiction. In *State v. Johnson,* 212 Wis. 301, 249 N. W. 284, the jurisdiction of the state courts to try a crime committed on lands within the exterior boundaries of a reservation but which had been patented in fee to an Indian allottee was sustained. The question here is whether the grant by the federal government to the state of the right to construct, operate, and maintain a state highway through the Indian reservation, although not divesting the United States of fee title, carries with it such complete power to regulate the use and occupancy of that highway as against all the public including the tribal Indians as to destroy the Indian title to the lands over which the right of way is given. At the outset

there should be a brief consideration of the nature and scope of the grant by the federal government to the state. The act of congress heretofore referred to provides:

"The secretary of the interior is hereby authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper state or local authorities for the opening and establishment of public highways, in accordance with the laws of the state or territory in which the lands are situated, through any Indian reservation or through any lands which have been allotted in severalty to any individual Indian under any laws or treaties but which have not been conveyed to the allottee with full power of alienation."

Title 25, Code of Federal Regulations, sec. 256.53, a regulation of the United States department of the interior, relating to opening highways through Indian reservations, requires the assessment of damages and benefits in all such cases and the approval of the secretary of the interior to such schedules of assessments. By article 2 of the treaty with the Menominee Indians, as ratified January 23, 1849, 9 U. S. Stats. at L. p. 952, the tribe sells and relinquishes to the United States all their lands in the state of Wisconsin. By article 2 of the treaty with the Menominee Indians, dated May 12, 1854, 10 U. S. Stats. at L. p. 1064, the United States agrees in return for cession of the lands to give the Indians certain described lands for a home. Article 3 of the treaty with the Menominee Indians, ratified April 18, 1856, 11 U. S. Stats. at L. p. 679, provides: "That all roads and highways, laid out by authority of law, shall have right of way through the lands of the said Indians on the same terms as are provided by law for their location through lands of citizens of the United States." It is conceded that the grant to the state did not include the fee title to the lands over which a right of way was given, and the question is whether a grant of less than a fee was effective to destroy the Indian title.

It is first necessary to determine the nature of this title. In *Johnson v. M'Intosh*, 8 Wheat. 543, 5 L. Ed. 681, it was held that the Indian title is a right of occupancy having nothing to do with the fee. This court laid down the same rule in *Veeder v. Guppy*, 3 Wis. *502, where it was said that the possession of a tract of land by Indians does not affect the validity of a conveyance of the fee by the federal government to a state or to a citizen, the relations of the Indians to the occupancy being a matter solely between the federal government and the Indians. This rule was followed in *Beecher v. Wetherby*, 95 U. S. 517, 24 L. Ed. 440, involving lands of the Menominee Indians in Wisconsin. It was there pointed out that the Indians are entitled only to a right of occupancy extinguishable at will by the United States with no limitations except such considerations of justice as ought to motivate a government in dealing with its wards. The fee title to the reservation is therefore in the United States, and the right of occupancy is in the Indians, the latter subject at any time to complete extinguishment by the United States. Under the treaty with the Menominee Indians there is an explicit provision for laying out public roads and highways through the reservation on the same terms as highways abutting the lands of citizens. The regulations of the department of the interior call for the assessment of benefits and damages where highways are laid out through Indian lands. Once the Indian title is perceived to be possessory in character, but subject to extinguishment by the United States, it is obvious that a grant by the United States which destroys this possessory right of the Indians destroys the Indian title. We conclude that this must be the result of the grant to the state of a right of way and permission to maintain a public highway. Such a grant includes by necessary implication the right of the state to take such possession of the land as will enable it to construct and repair and police the road, and to do all things necessary and incidental to the maintenance of a public

highway. The fact that it is a public highway implies that no person, Indian or white, may possess, occupy or use it to the exclusion of the general public or use it except on the same terms and upon the same conditions as the general public. Such a grant is wholly inconsistent with that right of occupancy which constitutes Indian title. After the grant is made, it is quite impossible for the Indians to continue occupation of it as part of the reservation. It cannot be a public highway if some group, Indian or white, may possess or occupy it to the exclusion of the traveling public or in such a manner as to make public travel dangerous or impractical. That there is a loss of some interest in the land when a right of way for a public highway through a reservation is given is indicated by the requirement that there be assessments of benefits and damages. Such an assessment is to compensate for something taken. What was taken here was the right of occupancy of the land affected. When this right was extinguished, so also was the Indian title. Any other conclusion would make the grant of a right of way through Indian lands a futile and useless proceeding. Such roads would not be public highways in any real sense. The state could not even require obedience by Indians to the ordinary rules of the road. These conclusions are in accord with the authorities as we read them. The case of *Clairmont v. United States,* 225 U. S. 551, 560, 32 Sup. Ct. 787, 56 L. Ed. 1201, was a prosecution for introducing liquor into Indian country. The defendant in possession of the liquor was apprehended in a train on a railroad right of way within the exterior limits of an Indian reservation. The supreme court reversed the conviction, stating:

"The Indian title or right of occupation was extinguished, without reservation; and the relinquished strip came under the jurisdiction of the . . . : state of Montana. It was not 'unappropriated public land,' or land 'owned or held by any Indian or Indian tribe.' "

See also *United States v. Denver & Rio Grande R. Co.* 150 U. S. 1, 14 Sup. Ct. 11, 37 L. Ed. 975; *Missouri, K. & T. R. Co. v. Roberts,* 152 U. S. 114, 14 Sup. Ct. 496, 38 L. Ed. 377. These are cases of grants to railroads which carry the fee with a right of reversion to the United States if the lands cease to be used for railroad purposes. *Northern Pacific Ry. v. Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044. However, the ground for holding the Indian title extinguished was that the right of occupation was destroyed.

The case most relied on by defendant is *United States v. Soldana,* 246 U. S. 530, 38 Sup. Ct. 357, 62 L. Ed. 870. In that case the federal government had granted a right of way to a railroad company through an Indian reservation. The statute under which the grant was made contained various provisions purporting to preserve and protect Indian rights in spite of the grant, and the court held that the legislative intent not to extinguish the Indian title was clear. In this connection it may be observed that while congress may attach such conditions to a grant as it chooses even if the conditions render the grant practically useless, such an intent is not to be ascribed to an act unless its language compels it. Any grant of rights in Indian lands, involving any possession for any purpose, is to some extent an inroad on the right of the Indians to occupy. In the case of the grant involved in the *Soldana Case, supra,* the Indians certainly could not barricade the tracks or so use the right of way as to interfere with the operation of the railroad. When a public highway operated by the state is the subject of the right of way, the control, policing, and other regulations which are inseparable incidents to the maintenance of such a highway must pass to the state and with them, at least in the absence of a clear reservation, the jurisdiction to make them effective. In this respect the grant of a right of way to a state for highway purposes is quite different from a railroad grant, and however

the latter may be construed, the former results in a destruction of Indian title or at least so much of it as is essential to the jurisdiction of the state to control the highway and its use.

We conclude that a grant by the United States to the state of Wisconsin of a right of way to construct and maintain a public highway must, in the absence of express declaration to the contrary, be assumed to vest the state with such control of the highway as is usual and necessary to the construction and maintenance of such a highway; that such a grant extinguishes the right of occupancy in the Menominee Indians, commonly referred to as Indian title, at least to the extent necessary to vest such jurisdiction and control; that while so maintained, the highway ceases to be Indian land; and that the rights of the Indians to use the highway are the same as those of the general public and subject to the same regulations and restrictions. It follows that the trial court had jurisdiction of the offense, and defendant was properly convicted.

*By the Court.*—Judgment affirmed.