Richard L. SANAPAW, Plaintiff-Respondent,

v.

Bernard SMITH, Defendant-Appellant.
[Case No. 82–1212.]

MENOMINEE TRIBAL ENTERPRISES, a Tribal Enterprise of
the Menominee Indian Tribe of Wisconsin, Plaintiff-
Respondent,

v.

Bernard SMITH, Defendant-Appellant.
[Case No. 82–1213.]

Court of Appeals

*Nos. 82–1212, 82–1213. Submitted on briefs March 14, 1983.—
Decided May 24, 1983.*
(Also reported in 335 N.W.2d 425.)

For the appellant the cause was submitted on the briefs of *John S. (Jack) Bartholomew* and *Bartholomew & Greenhill* of Shawano.

For the respondents the cause was submitted on the brief of *Joseph F. Preloznik* and *Preloznik & Associates, S.C.,* of Madison.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J. Bernard Smith appeals from orders[1] denying his motion to dismiss complaints filed by Richard L. Sanapaw and Menominee Tribal Enterprises for lack of subject matter jurisdiction. The sole issue raised on appeal is whether the circuit court erroneously concluded that it had subject matter jurisdiction concurrent with the Menominee Indian tribal court over civil causes of action stemming from an incident occurring on the Menominee Indian Reservation and involving enrolled members of the Menominee Indian Tribe. Because we conclude that whether the circuit court has concurrent subject matter jurisdiction depends on whether Smith was a "non-Indian" for jurisdictional purposes at the time the action was commenced, we reverse and remand for a determination of that issue.

On November 3, 1981, Sanapaw filed a complaint against Smith in circuit court alleging that he suffered injuries from a battery committed by Smith. Sanapaw's employer, Menominee Tribal Enterprises, also filed a complaint against Smith to recover damages for temporary disability payments it made to Sanapaw. Smith filed motions to dismiss the complaints on the ground that the circuit court lacked subject matter jurisdiction over causes of action arising from an incident involving Indians and occurring on an Indian reservation. In support of these motions, Smith alleged that both he and Sanapaw are enrolled members of the Menominee Indian Tribe and that the alleged assault and battery occurred on the Menominee Indian Reservation. Smith therefore contends that the tribal court has exclusive jurisdiction over the causes of action.

The circuit court determined that Smith's residence at the time of the alleged assault and battery was dispositive of the jurisdictional issue. The court found that

---

[1] Smith's petition for leave to appeal the non-final orders was granted on July 22, 1982.

at the time of the alleged incident, Smith resided in Shawano County and not on the Menominee Indian Reservation. The court therefore concluded that it had concurrent subject matter jurisdiction over the matters raised in the complaints.

The United States Supreme Court has traditionally recognized that Indian tribes possess attributes of sovereignty over their territory and members, which includes the power to regulate their internal and social relations. *See, e.g., United States v. Mazurie,* 419 U.S. 544, 557 (1975); *Worcester v. Georgia,* 6 Pet. 515, 557 (1832). The notion of Indian sovereignty has resulted in the imposition of jurisdictional limits on the reach of state law over Indian affairs. *See McClanahan v. State Tax Commission,* 411 U.S. 164, 171 (1973).

The Indian sovereignty doctrine has undergone significant evolution due to changed circumstances affecting the status of Indians vis-a-vis the states.[2] The trend has been away from the notion of inherent sovereignty as a bar to state jurisdiction over Indian affairs, and toward reliance on federal preemption.[3] *Id.* at 172. The

---

[2] *See, e.g., McClanahan v. State Tax Comm'n,* 411 U.S. 164, 171 (1973). As the United States Supreme Court noted in *McClanahan,* the Indian sovereignty doctrine has not been rigidly applied where Indians have left the reservation and become assimilated into the general community. *See, e.g., Oklahoma Tax Comm'n v. United States,* 319 U.S. 598 (1943). Similarly, notions of Indian sovereignty have been adjusted to account for a state's legitimate interest in regulating non-Indian affairs. *See, e.g., New York ex rel. Ray v. Martin,* 326 U.S. 496 (1946). The United States Supreme Court has also modified the doctrine in cases where essential tribal relations were not involved and where Indian rights would not be jeopardized. *McClanahan,* 411 U.S. at 172. *See also* Sherick, *State Jurisdiction Over Indians as a Subject of Federal Common Law: The Infringement-Preemption Test,* 21 Ariz. L. Rev. 85, 86, (1979).

[3] It is generally recognized that the source of Congress' plenary power over Indian matters derives from the federal responsibility

Indian sovereignty doctrine remains relevant, however, as a backdrop against which applicable treaties and federal statutes must be read. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143 (1980) ; *McClanahan*, 411 U.S. at 172.

In litigation between Indians and non-Indians arising out of conduct on an Indian reservation, resolution of conflicts between state and tribal court jurisdiction has depended, absent a governing act of Congress, on "whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." *Fisher v. District Court*, 424 U.S. 382, 386 (1976), quoting *Williams v. Lee*, 358 U.S. 217, 220 (1959). The United States Supreme Court has held that at least this same standard must be applied to cases involving only Indians. *Fisher*, 424 U.S. at 386. The Court has also recognized that even on the reservation, state laws may be applied unless that would interfere with reservation self-government or impair a right granted or reserved by federal law. *Organized Village of Kake v. Egan*, 369 U.S. 60, 75 (1962).

In resolving the jurisdictional conflict in this case, we first consider whether there is applicable federal law or policy that preempts the concurrent state court subject matter jurisdiction. In 1953, Congress enacted Public Law 280,[4] which granted to Wisconsin civil and criminal

for regulating commerce with Indian tribes and for treaty making. *See* U.S. Const. art. I, § 8, cl. 3, and art. II, § 2, cl. 2; *see also McClanahan*, 411 U.S. at 172, n. 7.

[4] 67 Stat. 588 (1953) (codified in 18 U.S.C.A. § 1162 (West 1966) and 28 U.S.C.A. § 1360 (West 1976)). Public Law 280 ch. 505 § 4, 67 Stat. 588 (1953), provided in part:

(a) Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, and those civil

jurisdiction over all Indian tribes in the state except the Menominee Tribe. On June 17, 1954, Congress enacted the Menominee Termination Act,[5] which provided for termination of federal supervision of the Menominee Tribe. In August, 1954, Congress amended Public Law 280 to place the Menominee Tribe within the provisions of that law.[6] The Menominee Termination Act was sub-

laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State:

. . . .

Wisconsin . . . All Indian country within the State, except the Menominee Reservation.

Indian country is defined in 18 U.S.C.A. § 1151 (West 1966):

Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country," as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same. June 25, 1948, c. 645, 62 Stat. 757; May 24, 1949, c. 139, § 25, 63 Stat. 94.

[5] Chapter 303, 68 Stat. 250 (1954) (repealed 1973).

[6] Act of Aug. 24, 1954, ch. 910, § 2, 68 Stat. 795. After this amendment, 28 U.S.C.A. § 1360(a) (West 1976) provided in part:

(a) Each of the States or Territories listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over other civil causes of action, and those civil laws of such State or Territory that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

. . . .

Wisconsin . . . All Indian country within the State.

sequently repealed by the Menominee Restoration Act,[7] however, and on February 20, 1976, the United States accepted the retrocession of state jurisdiction that the State of Wisconsin had exercised over the Menominee Tribe.[8]

Smith argues that because of the restoration of the Menominee Tribe and the retrocession of state jurisdiction under Public Law 280 over the tribe and its members, the federal government has preempted state jurisdiction over the matters alleged in the plaintiffs' complaints. Smith also asserts that state jurisdiction is lacking because the federal government and the Menominee Tribe have not consented to the state's assumption of jurisdiction pursuant to 25 U.S.C. § 1322(a).[9]

---

[7] 87 Stat. 770 (1973) (codified at 25 U.S.C.A. § 903–903(f) (West 1983).

[8] The jurisdictional change became effective on March 1, 1976. *See* 41 Fed. Reg. 8516 (1976).

[9] 25 U.S.C.A. § 1322(a) (West 1983) provides in part:
Assumption by State of civil jurisdiction
Consent of United States; force and effect of civil laws
The consent of the United States is hereby given to any State not having jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within such State to assume, with the consent of the tribe occupying the particular Indian country or part thereof which would be affected by such assumption, such measure of jurisdiction over any or all such civil causes of action arising within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State.
25 U.S.C.A. § 1326 (West 1983) sets forth the procedure that the affected tribe follows when giving consent to state jurisdiction. That provision states:
Special election
State jurisdiction acquired pursuant to this subchapter with respect to criminal offenses or civil causes of action, or with respect

From the language of Public Law 280 and 25 U.S.C. § 1322(a), it is unclear whether the jurisdiction over Indian affairs that the federal government retains but may grant to the states, and to which Indian tribes consent, extends to enrolled tribal members who reside off the reservation. Both enactments speak of jurisdiction over causes of action between Indians or to which Indians are parties, which arise in Indian country. Although "Indian country" is statutorily defined elsewhere,[10] the term "Indian" is not defined for purposes of these provisions.

Other jurisdictions that have considered jurisdictional conflicts between state and tribal courts have generally held that a state court has no jurisdiction over civil actions arising from an incident on the reservation and involving tribal members who reside on a reservation unless the federal government has granted such jurisdiction under Public Law 280 or 25 U.S.C. § 1322(a), and the affected tribe has consented under 25 U.S.C. § 1322(a). *See, e.g., Sigana v. Bailey,* 164 N.W.2d 886, 891 (Minn. 1969); *Malaterre v. Malaterre,* 293 N.W.2d 139, 143 (N.D. 1980). In *Williams v. Lee,* 358 U.S. 218, 220 (1959), the United States Supreme Court stated that Congress has acted consistently under the assumption that states have no power to regulate the affairs of Indians *on the reservation.* Similarly, the Supreme Court has acknowledged that 25 U.S.C. § 1322(a) grants the consent of the United States to states wishing to assume

to both, shall be applicable in Indian country only where the enrolled Indians within the affected area of such Indian country accept such jurisdiction by a majority vote of the adult Indians voting at a special election held for that purpose. The Secretary of the Interior shall call such special election under such rules and regulations as he may prescribe, when requested to do so by the tribal counsel or other governing body, or by 20 per centum of such enrolled adults.

[10] *See* note 4.

civil jurisdiction over *reservation Indians*. *McClanahan*, 411 U.S. at 177.[11] These cases suggest that, absent a federal grant of jurisdiction under Public Law 280 or 25 U.S.C. § 1322(a), and tribal consent to state jurisdiction under 25 U.S.C. § 1322(a), state court jurisdiction over an incident arising within "Indian country" and involving enrolled tribal members who reside on a reservation is federally preempted.

In proceedings before the circuit court, the parties did not dispute that the alleged assault and battery occurred within the Menominee Reservation boundaries. The court determined, however, that state jurisdiction was not federally preempted because Smith resided off the reservation at the time of the alleged incident. The court essentially equated Smith's status as a state resident with that of a non-Indian.

We conclude that a determination of whether state court jurisdiction in this case is federally preempted because of Public Law 280 or 25 U.S.C. § 1322(a) depends on findings concerning Smith's status as either an Indian or a non-Indian for jurisdictional purposes. Courts in other jurisdictions have indicated that one who is recognized racially as an Indian may nevertheless be recognized as a non-Indian or "emancipated" Indian for jurisdictional purposes. *See, e.g., State v. Attebery*, 519 P.2d 53 (Ariz. 1974); *State v. Allan*, 607 P.2d 426, 428 (Idaho 1980).[12] A determination of whether an individ-

[11] *McClanahan* involved a suit by a Navajo Indian against the State Tax Commission of Arizona. In its decision, the Supreme Court stated: "[A]ppellee apparently concedes that, in the absence of compliance with 25 U.S.C. § 1322(a), the Arizona courts can exercise neither civil nor criminal jurisdiction over *reservation* Indians." [Emphasis added.]

[12] The cases that speak of determining Indian or non-Indian status for jurisdictional purposes have generally involved the issue of state criminal jurisdiction over persons committing acts on

ual may be considered a non-Indian for jurisdictional purposes depends on the totality of circumstances. *See Allan*, 607 P.2d at 428. Emancipation may occur when an Indian has severed his connection with the tribe to which he belonged or adopted a non-Indian lifestyle. *See id; State v. Campbell*, 55 N.W. 553, 554 (Minn. 1893).

In *Ex parte Pero*, 99 F.2d 28, 31 (7th Cir. 1938), the United States Court of Appeals stated three tests for determining Indian status: (1) preponderance of blood; (2) the person's habits; (3) substantial amount of Indian blood plus racial status in fact as an Indian. Living off the reservation and adopting a non-Indian lifestyle is relevant to the determination for jurisdictional purposes of the status of one recognized racially as an Indian. *See Allan*, 607 P.2d at 432 (McFadden, J., concurring).

In this case, whether Smith may be considered a non-Indian for jurisdictional purposes depends on findings of fact concerning his status. *See id*. at 428. Factors relevant to this issue include Smith's racial status, habits, and lifestyle. A consideration of Smith's lifestyle includes a determination of his residence, since place of residence could be important evidence of whether Smith has adopted a non-Indian lifestyle.

If Smith is found to be an Indian for jurisdictional purposes, state court jurisdiction would be federally preempted because this case would involve an incident arising within "Indian country" between "Indians." This falls within the scope of civil jurisdiction over the Menominee Tribe that the federal government retains and has not granted to Wisconsin under Public Law 280 or 25

Indian reservations. We have found nothing to indicate, however, that a determination of status would not be relevant to the issue of whether a state court may assert civil jurisdiction over matters arising from a reservation-based incident and involving enrolled tribal members.

U.S.C. § 1322(a), or to which the Menominee Tribe has not consented under 25 U.S.C. § 1322(a). If Smith is a non-Indian for jurisdictional purposes, however, state jurisdiction would not be federally preempted because of Public Law 280 or 25 U.S.C. § 1322(a).

We also conclude that if Smith could be considered an Indian for jurisdictional purposes, the state court's assumption of concurrent jurisdiction would interfere with Menominee tribal sovereignty and self-government and infringe on "the right of reservation Indians to make their own laws and be ruled by them." *See Williams*, 358 U.S. at 220. Under those circumstances, tribal sovereignty and the right of self-government would include the right to decide what conduct on the reservation subjects Indians to civil liability in tribal court. *See Enriquez v. Superior Court*, 566 P.2d 522, 523 (Ariz. 1977). In addition, the plaintiffs would be asking a state court to assume jurisdiction over causes of action arising from a reservation-based incident and involving only Indians. The state's interest in providing a forum under those circumstances would be minimal, and the assertion of state jurisdiction would infringe on the right of the Menominee Tribe to be self-governing and to ensure that the tribal court, which the Menominee Tribe has designated as their legal forum, resolve the underlying dispute in this case.

If Smith is not an Indian for, jurisdictional purposes, we conclude that concurrent state court jurisdiction would not constitute an infringement on tribal sovereignty. Although the Menominee Tribe would have an interest in litigation involving an on-reservation act and enrolled tribal members, the state could have a concurrent interest, especially if Smith has adopted a non-Indian lifestyle and has become a state resident. In addition, state courts have long been available as forums for Indian plaintiffs bringing suit against non-Indians, even when the cause of

action stems from a reservation-based incident. *See, e.g., Williams,* 358 U.S. at 220; *Paiz v. Hughes,* 417 P.2d 51, 52 (N.M. 1966).

We also note that the federal policy of promoting Indian self-government is clearest when all components of a transaction are reservation-based. If a tribal member goes beyond the reservation boundaries and adopts a non-Indian lifestyle, however, the possibility arises that state law might apply to transactions involving that person. We are not convinced that the power to determine the type of civil causes of action involved in this case is inherent in tribal sovereignty[13] or that the Menominee tribal court would necessarily have exclusive jurisdiction over such matters if they involve a tribal member who could be considered a non-Indian for jurisdictional purposes.[14]

[13] This case does not involve matters that would seem to more clearly fall within the concept of tribal sovereignty; *i.e.,* a custody determination affecting Indian children residing on the reservation or a determination of tribal membership.

[14] Smith partly bases his contention that the tribal court necessarily has exclusive jurisdiction on the following excerpt from the Wisconsin Judicare's Indian Law handbook:

B. Tribal Civil Jurisdiction
I. General Civil Litigation
a. Indian Defendant

. . . .

Tribal courts have exclusive jurisdiction over suits against Indians arising from transactions occurring within Indian country.

Legal Services Corporation, Indian Law, ch. V, at IV.B.12. This language is similar to Public Law 280 and 25 U.S.C. § 1322(a). To hold that these provisions necessarily apply to enrolled tribal members who could nevertheless be considered non-Indians for jurisdictional purposes, however, could lead to absurd results. For example, an individual may have retained his tribal membership but essentially severed his tribal relationships by residing and working far from the reservation boundaries. If that person was involved in an incident on the reservation and was sued because of that incident, it would seem reasonable to recognize that the state may have a legitimate interest in the case that could coexist with any

■

We also conclude that a determination of whether state court jurisdiction in this case is federally preempted or constitutes interference with tribal sovereignty requires that Smith's status as either an Indian or non-Indian for jurisdictional purposes be determined as of the time this action was commenced. A court's jurisdiction generally depends on the state of things at the time the action is commenced. *See Smith v. Sperling,* 354 U.S. 91, 91 n. 1 (1957) ; *Sadat v. Mertes,* 615 F.2d 1176, 1180 (7th Cir. 1980).

In *Sadat,* the United States Court of Appeals applied this rule in determining whether the federal district court had subject matter jurisdiction under 28 U.S.C. § 1322 (a) (1). That statute creates the federal court's jurisdiction over actions between citizens of different states. The court therefore had to resolve the jurisdictional question by determining whether the plaintiff was a state citizen. The court centered its inquiry on the plaintiff's status at the time the action was commenced, which the court noted was the time at which jurisdiction is determined. *See id.* at 1180.

■

Like the determination of federal jurisdiction under 28 U.S.C. § 1322(a), state court jurisdiction in this case depends, in part, on Smith's status as either an Indian or non-Indian for jurisdictional purposes. That status must be determined as of the time the action was commenced. In Wisconsin, an action is commenced when a summons and complaint are filed with the court. *See* sec. 893.02, Stats. We therefore reverse and remand for findings concerning Smith's status for jurisdictional purposes as

tribal interest without constituting interference with the tribal sovereignty. We also note that under § 753.03, Stats., state circuit courts have power to hear and determine all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court.

of the time the summonses and complaints in these cases were filed.

Sanapaw and Menominee Tribal Enterprises argue that the circuit court has concurrent jurisdiction because it is unclear whether the alleged assault and battery occurred on the Menominee Reservation. During proceedings before the circuit court, witnesses testified that the alleged incident occurred within reservation boundaries. This testimony was not controverted. In addition, neither Sanapaw nor Menominee Tribal Enterprises raised this issue in the circuit court. This court will not consider this issue, which was raised for the first time on appeal. *See Allen v. Allen,* 78 Wis. 2d 263, 270, 254 N.W.2d 244, 248 (1977).

*By the Court.*—Orders reversed and cause remanded.