JOHN F. TRUBY, District Attorney Sauk County
You have asked for guidance with respect to state, county and tribal authority to regulate traffic in housing projects that have been built and are maintained by the Winnebago Tribe. I assume that these housing projects are located on land within Sauk County that was purchased by the federal government in trust for the Winnebago Tribe. In 71 OP. Att'y Gen. 82, 85 (1982), it is noted that land held in trust for Indians by the federal government has the same legal status as reservation lands. Thus, any federal and state laws that are applicable to reservation lands are applicable to the same extent to Winnebago trust lands.
You have asked specifically: 1) whether the streets located within these housing projects are "highways" within the meaning of section 340.01 (22), Stats., over which state and county traffic regulations can be enforced; 2) if so, whether non-tribal law enforcement officers can enforce such laws on streets within the housing projects; 3) whether the Winnebago Tribe has authority to enact traffic laws applicable to streets within the housing projects; and 4) if so, whether non-tribal law enforcement officers can enforce such tribal laws on streets within the housing projects. While you do not indicate any specific provisions of the traffic code in which you are particularly interested, I assume that your primary focus is on chapter 346, the "rules of the road." I address each of your questions in turn. *Page 123 
 1. Are the streets located within the tribal housing projects "highways" over which state and county traffic regulations can be enforced?
Under the state's traffic code, state and local authorities have the duty to enforce chapter 346 only on "highways." Sec.346.02 (1), Stats. Section 340.01 (22) defines "highway" as "all public ways and thoroughfares." Section 340.01 (22) expressly excludes "private roads or driveways" from the definition of "highway." Section 340.01 (46) defines "private road or driveway" as "every way or place in private ownership and used for vehicular travel only by the owner and those having express or implied permission from the owner . . . ." Under this definition, the streets located within the housing projects are not "private roads or driveways" because they are not "in private ownership." Public authorities (either the United States government, the Winnebago Tribe, or both) hold title to the property on which the roads are located. The streets, therefore, must be considered "highways" within the meaning of section 340.01 (22).
This conclusion does not necessarily mean, however, that state and county traffic regulations are enforceable on these streets. The United States Supreme Court has recognized that Indian tribes have sovereignty over their territory and, therefore, as a general matter, states may not exercise jurisdiction in Indian country. California v. Cabazon Band of Mission Indians, 480 U.S. 202,207 (1987). States may, however, exercise jurisdiction in Indian country where expressly authorized by Congress, Cabazon,480 U.S. at 207, or where federal law does not preempt state jurisdiction. Id. at 216.
It is, therefore, necessary first to inquire whether Congress has expressly authorized the state to enforce its traffic regulations on the trust land. In Pub.L. 280 (67 Stat. 588,18 U.S.C.A. § 1162 (1984)) (hereafter "Pub.L. 280"), Congress expressly authorized Wisconsin, among other states, to assume criminal law jurisdiction over all Indian country within the state to the same *Page 124 
extent as elsewhere within the state.[1] Public Law 280, therefore, authorizes the state to enforce chapter 346 on highways within the trust land to the extent any given provision is "criminal" in nature.[2] Section 939.12 of the state statutes defines a "crime" as "conduct which is prohibited by state law and punishable by fine or imprisonment or both. Conduct punishable only by a forfeiture is not a crime." If a law is not considered a "crime" under state law, Public Law 280 does not authorize its application to Indian country. State v. St.Germaine, 150 Wis.2d 171 (Ct. APP. 1989).
Examination of the provisions of chapter 346 reveals that most of its provisions are not "criminal" within the meaning of section 939.12 because the conduct regulated is punishable only by forfeitures rather than fines or imprisonment. The only criminal provisions contained in chapter 346 relate to fleeing a traffic officer (sections 346.04 (3) and 346.17 (3)); reckless and drunken driving (section 346.65), and the duties incumbent upon the operator of a vehicle involved in an accident (section346.74).
However, a state's characterization of laws as "criminal" is not necessarily conclusive as to the laws' status for purposes of analysis under Public Law 280's grant of criminal jurisdiction. *Page 125 Cabazon, 480 U.S. at 211. In Cabazon, the Court drew a distinction between state laws that are "criminal/prohibitory" in nature and those that are "civil/regulatory" in nature. Id. at 209-10. The Court stated that "if the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation." Id. at 209. The shorthand test is whether the conduct at issue violates the state's public policy.
The Wisconsin Court of Appeals has recently applied this test in St. Germaine, when it considered whether Wisconsin has been given authority under Public Law 280 to enforce in Indian country state laws governing operation of a vehicle after revocation and operation of a vehicle while intoxicated. The court stated:
 Driving after revocation is defined as criminal not only by Wisconsin statutes but also by the state policy and purpose behind the prohibition. Driving after revocation is not conduct permitted subject to regulation; it is absolutely prohibited. This prohibition reflects the state's public policy that certain individuals are dangerous drivers who must be prohibited from operating a motor vehicle to protect the health and safety of citizens.
 Under the Cabazon test, operating while intoxicated is equally a criminal law for purposes of Pub.L. 280. The legislature has expressly stated that operating a motor vehicle while intoxicated is against Wisconsin's public policy. . . .
Id. at 175-76.
Under the reasoning of St. Germaine, I therefore conclude that Wisconsin's laws governing fleeing a traffic officer (sections346.04 (3) and 346.17 (3)), reckless and drunken driving (sections *Page 126 346.61-346.64), and duties upon striking a person or vehicle (section 346.67) are "criminal laws" within the meaning ofCabazon.[3] The intent of the Legislature in enacting these laws was obviously not to permit the activity, subject to regulation, but to prohibit certain conduct entirely in the interests of protecting public health and safety. Under Public Law 280, the county also may enforce these provisions on the streets in the housing projects because the state utilizes law enforcement officers of all units of government to enforce chapter 346. Sec. 349.02, Stats.[4]
Having determined that Congress has authorized state enforcement on Indian land of the statutory provisions discussed above, it is next necessary to inquire whether, under federal preemption analysis, the remaining provisions of chapter 346 may likewise be enforced. In preemption analysis, courts engage in an inquiry into the nature of the state, federal and tribal interests involved in deciding whether a state may assert jurisdiction over *Page 127 
Indian country in the absence of express congressional authorization. White Mountain Apache Tribe v. Bracker, 448 U.S. 136,145 (1980). The inquiry is designed to determine whether the exercise of state authority would interfere with or be incompatible with federal and tribal interests. New Mexico v.Mescalero Apache Tribe, 462 U.S. 324, 334 (1983); State v. BigJohn, 140 Wis.2d 322, 327, 409 N.W.2d 455 (Ct.App. 1987). The inquiry proceeds in light of traditional notions of Indian sovereignty and the congressional goal of Indian self-government, including the goal of encouraging tribal self-sufficiency and economic development. Cabazon, 480 U.S. at 216.
While courts have assigned some importance to tribal self-government as an independent barrier to the assertion of state regulatory authority over reservations, Bracker, 448 U.S. at 142, recent United States Supreme Court cases demonstrate a trend away from utilizing the idea of inherent tribal sovereignty as an independent bar to state jurisdiction. Three Affil. Tribes of Ft.Berthold v. Wold Engine., 476 U.S. 877, 884 (1986); State v.Webster, 114 Wis.2d 418, 432, 338 N.W.2d 474 (1983). Recent cases rely more on principles of federal preemption. WoldEngine., 476 U.S. at 884. Nevertheless, traditions of Indian sovereignty continue to provide an important "`backdrop against which [any] applicable treaties and federal statutes must be read'" in any preemption analysis. Rice v. Rehner, 463 U.S. 713,719 (1983).
It is my opinion that while Public Law 280 does not authorize the state to apply many of the provisions of chapter 346 to the streets in question, the state may apply these other provisions on the basis of federal common law. I infer from some of the questions that you have raised that the Winnebago Tribe has not enacted a tribal traffic code and does not have an effective traffic enforcement mechanism. Given this, I believe that the state's interests in enforcing chapter 346 on the streets in question outweigh any tribal and federal interests. The state's interests in *Page 128 
protecting public health and safety on the streets in question by enforcing chapter 346 are apparent. The technological advance in the design of vehicles that has resulted, for example, in a great increase in the speeds of vehicles and the accompanying increase in the number of traffic accidents and fatalities demonstrates the extent of the threat posed to the safety and welfare of the public by unsafe drivers.
The Wisconsin Supreme Court has provided some guidance in this area. In County of Vilas v. Chapman, 122 Wis.2d 211,361 N.W.2d 699 (1985), the court decided that the state's legitimate interests in regulating the use of public highways outweighs the interests of a tribe and the federal government where the tribe lacks a tradition of self-government in the area of traffic regulation. Id. at 215-17. Because the Winnebago Tribe apparently has no motor vehicle code, the county thus has the authority to enforce the remaining provisions of chapter 346 on the streets in the housing project. However, if the tribe should enact its own motor vehicle code and provide for effective enforcement, the state's authority to enforce chapter 346 on the trust land would probably be preempted by federal law. See State v. Webster,114 Wis.2d 418, 338 N.W.2d 474 (1983).
 2. Given that chapter 346 applies to streets within the housing projects, do non-tribal law enforcement officers have the authority to enforce the laws on the trust land?
As noted above, Public Law 28 () provides that the criminal laws of the state shall have the same force and effect within Indian country as they have elsewhere within the state. This reference to state laws having the "same force and effect" within Indian country as elsewhere implies that state and county law enforcement officers have the authority to enforce chapter 346 on the streets in question. If the state's designated law enforcement officers could not enforce chapter 346 on the trust land, it is not clear whether the laws would have the same force and effect within Indian country as they have outside it. *Page 129 
Additionally, the legislative history of Public Law 280 gives explicit support to the conclusion that non-tribal law enforcement officers have the authority to enforce chapter 346 on these streets. The legislative history demonstrates that the primary concern of Congress in enacting Public Law 280 was to combat the problem of lawlessness on some Indian reservations.Bryan, 426 U.S. at 379. The House Report of the bill which became Public Law 280 stated that:
 As a practical matter, the enforcement of law and order among the Indians in the Indian country has been left largely to the Indian groups themselves. In many States, tribes are not adequately organized to perform that function; consequently, there has been created a hiatus in law-enforcement authority that could best be remedied by conferring criminal jurisdiction on States indicating an ability and willingness to accept such responsibility.
H.R. Rep. No. 848, 83rd Cong., 1st Sess., reprinted in 1953 U.S. Code Cong. Admin. News 2409, 2411-12. Clearly, Public Law 280's grant of criminal jurisdiction to the states conferred on them the authority not only to extend their criminal laws to Indian country, but also to enforce those laws with their own personnel.
The same logic applies to extension of state laws to Indian country under principles of federal common law. The Wisconsin Supreme Court's decision in Chapman demonstrates that one of the main considerations in determining whether a state law may apply to Indian country is whether the relevant tribe is adequately organized to perform law enforcement functions. Where the tribe is not adequately organized for such functions, courts have not only allowed the state law to extend to Indian country, but have also allowed the state's personnel to enforce the law. Any other result would contradict one of the basic purposes of the federal common law. *Page 130 
 3. Does the Winnebago Tribe have the authority to enact traffic laws applicable to streets within the housing projects?
Indian tribes have long been recognized as sovereign entities "`possessing attributes of sovereignty over both their members and their territory . . . .'" United States v. Wheeler, 435 U.S. 313,323 (1978). As sovereign entities, Indian tribes have the power to regulate their internal and social relations, to make their own substantive laws in internal matters, and to enforce that law in their own forums. Santa Clara Pueblo v. Martinez,436 U.S. 49, 55-56 (1978). The Winnebago Tribe thus has the authority to enact a tribal traffic ordinance that applies to members of the tribe on the streets within the housing projects.
Whether the tribe has the authority to enact a tribal traffic ordinance that applies to non-members of the tribe is a more difficult question. Under existing law, tribes may in some circumstances assert civil jurisdiction over non-members, Montanav. United States, 450 U.S. 544 (1981), but they may not assert criminal jurisdiction over non-members, Oliphant v. SuquamishIndian Tribe, 435 U.S. 191 (1978).
As the United States Supreme Court stated in Montana:
 To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations . . . . A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe. *Page 131 
Montana, 450 U.S. at 565-66 (citations omitted). Because traffic offenses are matters that arguably have a direct effect on the health or welfare of the tribe, the Winnebago Tribe probably thus has the authority to enforce "civil" regulations over non-members operating vehicles within the housing projects. Cf Brendale v.Confederated Tribes Bands of Yakima, ___ U.S. ___,109 S.Ct. 2994 (1989)
The tribe does not, however, have the authority to impose criminal sanctions against non-members. Oliphant,435 U.S. at 210-12.
The legality of any attempt by the tribe to govern the conduct of non-members operating vehicles within the housing projects thus depends on the nature of the specific rules which the tribe might enact.
 4. Assuming that the Winnebago Tribe has the authority to adopt traffic ordinances applicable within the housing projects, do county law enforcement officers have the authority under state law to enforce such laws on streets within the housing projects?
The authority of county law enforcement officers to enforce tribal traffic laws within the housing projects depends upon the nature of the authority given to the county by the state. A county is totally a creation of the Legislature, and its powers must be exercised within the scope of authority ceded to it by the state. State ex rel. Conway v. Elvod, 70 Wis.2d 448, 450,234 N.W.2d 354 (1975). The question whether county law enforcement officers can enforce tribal traffic laws thus depends upon the authority conferred by the Legislature.
Under section 59.07 (141), the Legislature explicitly authorized county boards to enter into agreements governing county-tribal law enforcement, pursuant to the adoption of a county resolution authorizing such an agreement. Section 59.07
(141) also provides that a county board may seek funding for a county-tribal law enforcement agreement under section 165.90. Under section *Page 132 165.90, a county and tribe must develop and submit a "joint program plan" to the Wisconsin Department of Justice for approval. The plan must identify, among other things, the program's policies regarding deputization. Sec. 165.90 (2)(g), Stats. The reference to "deputization" demonstrates that under section 165.90 the Legislature intended to grant county law enforcement officers the authority to enforce tribal laws, but only after the county and tribe reached an accord on operation of the cooperative law enforcement agreement. Thus, county law enforcement officers may not enforce tribal traffic laws within the housing projects unless the Winnebago Tribe and the county enter into an agreement in accordance with section 59.07 (141).
DJH:JDN
[1] The land held in trust in Sauk County for the Winnebago Tribe is "Indian country" within the meaning of18 U.S.C.A. § 1151 (1984). See 71 Op. Att'y Gen. at 83-88.
[2] Public Law 280 also provides that Wisconsin shall have the authority to exercise jurisdiction over "civil causes of action between Indians or to which Indians are parties . . . to the same extent that [the] State has jurisdiction over other civil causes of action . . . ." 25 U.S.C.A. § 1322 (a) (1983). While one might argue that this provision gives Wisconsin the authority to enforce traffic laws in Indian country, the United States Supreme Court has interpreted the provision to authorize jurisdiction only over "private civil litigation."Bryan v. Itasca Cty., Minnesota, 426 U.S. 373 (1976). Enforcement of state traffic law's cannot be considered "private civil litigation" in the sense intended by the Supreme Court. If Public Law 280 is to apply to the situation analyzed here, the state therefore must derive its authority from Public Law 280's grant of criminal jurisdiction
[3] A United States district court in an unpublished decision addressed an issue similar to the one here under consideration.See Confederated Tribes of the Colville Reservation v.Washington, NO. C-88-394-JLQ (E.D. Wash. 1988). The district court decided that the State of Washington had the authority under Public Law 280 to enforce speeding laws on a reservation because Washington's policy was to completely prohibit speeding. The court stated that while driving itself is not against public policy, activities like reckless driving and speeding are against public policy because of the dangers which those activities pose to the public. Id at 21.
[4] It is important to note, however, that Public Law 280 does not authorize the county to enforce on the streets in the housing projects any county ordinances that have been enacted under the authority of chapter 349. Public Law 280 expressly provides that the criminal laws of the state "shall have the same force and effect within . . . Indian country as they haveelsewhere within the State or Territory." 18 U.S.C.A. § 1162
(a) (1984) (emphasis added). Because county ordinances are not of statewide application, Public Law 280's grant of criminal jurisdiction does not authorize their enforcement in Indian country. Cf Santa Rosa Band of Indians v. Kings County, 532 F.2d 655,659-64 (9th Cir. 1975) (deciding that Public Law 280's grant of civil jurisdiction did not authorize counties to extend their ordinances to Indian country). *Page 133